```
                                                                    1

                      UNITED STATES DISTRICT COURT
                      EASTERN DISTRICT OF NEW YORK
     - - - - - - - - - - - - - - - X

     UNITED STATES OF AMERICA,      : 22cr106(LDH)
                                    :
              Plaintiff,             :
                                    :
           -against-                 : United States Courthouse
                                    : Brooklyn, New York
     RICKETTS, ET AL,                :
     DEFT. 4 - JONATHAN              :
     GOULBOURNE,                     : Tuesday, May 21, 2024
                                    : 5:00 p.m.
              Defendants.            :
     - - - - - - - - - - - - - - - X

           TRANSCRIPT OF CRIMINAL CAUSE FOR A STATUS CONFERENCE
                 BEFORE THE HONORABLE LASHANN DEARCY HALL
                        UNITED STATES DISTRICT JUDGE

                            A P P E A R A N C E S:

     For the Government:    UNITED STATES ATTORNEY'S OFFICE
                              Eastern District of New York
                              271 Cadman Plaza East
                              Brooklyn, New York 11201
                            BY: FRANCISCO NAVARRO, ESQ.
                                CHAND EDWARDS-BALFOUR, ESQ.
                                Assistant United States Attorneys

     For the Defendant:     SHER TREMONTE LLP
                              90 Broad Street, Ste 23rd Floor
                              New York, NY 10004
                            BY: NOAM BIALE, ESQ.
                                MARTIN NJOROGE, ESQ.

     On Behalf of MDC:   Dara Olds, Esq.
                         Richard Hayes, Esq.
                         Kathleen Mahoney, Esq.

     Representative of the BOP:  Adam Johnson

     Court Reporter:    SOPHIE NOLAN
                           225 Cadman Plaza East/Brooklyn, NY 11201
                           NolanEDNY@aol.com
     Proceedings recorded by mechanical stenography, transcript
     produced by Computer-Aided Transcription
```

SN          OCR          RPR

Proceedings 2

(Via Teleconference.)

(The Hon. LaSHANN DEARCY HALL, presiding.)

THE COURTROOM DEPUTY: This is a criminal cause for a telephone status conference in the matter of USA versus Jonathan Goulbourne, docket number 22-CR- 106.

Before asking the parties to state their appearances, I would like to note the following: Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions including removal of court-issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court.

Counsel, please state your appearance, starting with the Government.

MR. EDWARDS-BALFOUR: Good afternoon, Your Honor. This is Chand Edwards-Balfour on behalf of the Criminal Division. Along with me is Francisco Navarro.

THE COURT: Good afternoon.

MS. OLDS: Good afternoon, Your Honor. On behalf of MDC, Assistant U.S. Attorney Dara Olds, along with my colleague Assistant U.S. Attorney Richard Hayes and Assistant U.S. Attorney Kathleen Mahoney.

MR. BIALE: Good afternoon, Your Honor. Noam Biale

1   and Martin Njoroge for Jonathan Goulbourne.
2              THE COURT:  Good afternoon to you as well.
3              All right, folks, as you all know I somewhat hastily
4   ordered that we have this conference because I am responding
5   to a series of letters, first by the -- submitted by Mr. Hayes
6   from the U.S. Attorney's Office informing the Court on May
7   17th that representation by the five individuals whom the
8   Court has directed to appear for an evidentiary hearing on May
9   23rd will be represented by the Department of Justice.
10             Mr. Biale wrote to the court thereafter on May 19th
11  to respectfully suggest that the Court inquire with respect to
12  potential conflicts that could exist with respect to the
13  representation by each of the five individuals singularly by
14  the Department of Justice.
15             Mr. Biale included in his May 19 letter colloquy
16  between the Court and Mrs. Papapetriou where she indicates
17  upon examination by the Court, that with respect to the
18  provision of medication to Mr. Goulbourne, that she had been
19  lied to by medical staff.  It seemed in this Court's mind that
20  Mr. Biale's concern was a reasonable one and I directed the
21  Government to respond.
22             The response to the Court's -- excuse me, the
23  response by the Government to Mr. Biale's letter does not, as
24  Mr. Biale notes in his letter dated the same date which is May
25  20th, that the Government's response does not address the

1   issue of a conflict, but rather the propriety in a
2   conflict-free circumstance of the Department of Justice
3   approving representations of this sort.
4           But I have to address that there may be a conflict
5   here and isn't the prudent course that each of the five
6   individuals be apprised that, in fact, there may be a conflict
7   and that they have an opportunity, based upon the receipt of
8   that advice, which of course the Court cannot provide; it's
9   not my role to provide advice and counsel to witnesses; but in
10  any event in the typical criminal context, the Court would
11  appoint a CJA counsel.  Of course, I wouldn't do so here but
12  that doesn't certainly prevent any of the witnesses or, to an
13  extent the Department of Justice, to independently finance, at
14  least as a starting point, an attorney to be able to apprise
15  each of the five witnesses of the potential conflict so that
16  the Court can know that they are proceeding knowingly about
17  any potential conflict and are waiving any potential conflict;
18  which by the way, I would deem to be waivable.
19          But whether in a criminal context or a civil
20  context, all individuals are entitled to conflict-free
21  counsel.
22          I will hear from the Government.
23          MS. OLDS:  Thank you, Your Honor.  This is assistant
24  U.S. Attorney Dara Olds.
25          We want to be sure that the Court is aware that we

Case 1:22-cr-00106-LDH   Document 485   Filed 07/10/25   Page 5 of 14 PageID #: 5052

Proceedings                                                5

1  have made these individuals aware of that potential for
2  conflicts, including the fact that they've been provided even
3  with defense counsel's letter of May 19th and defense
4  counsel's view that there is currently a conflict.
5          The DOJ takes the position that there's a possible
6  conflict down the line, as Mr. Biale said.  In the event
7  that there was a criminal investigation with witnesses, we can
8  understand conflict arising in that context but we're not
9  aware of any such criminal investigation at this point so --
10         THE COURT:  Right, but I just want to be clear; the
11 right to have a conflict-free attorney, you're not suggesting
12 that that's limited only to a criminal context.
13         MS. OLDS:  Correct, Your Honor.  We're not
14 suggesting that here.  We're just suggesting that here at a --
15 as far as we can tell for now, there is not a conflict between
16 the interest of the MDC and with these witnesses and that they
17 have been given the opportunity to decline --
18         THE COURT:  Well, let me take a step back.
19         Let's assume that as a result, and putting aside any
20 criminal issues, right, but let's just assume just for sake of
21 argument because I just want to kind of just go down the road
22 of potential conflict that could arise that doesn't implicate.
23         What if the Court were to determine based on the
24 information that's elicited at the evidentiary hearing that a
25 referral to the Inspector General's office is appropriate?

1    Obviously that is not the Attorney General's office,
2    but isn't the fact that there is some testimony -- or, excuse
3    me, representations -- and let me take a step back because it
4    wasn't testimony -- representations by Mrs. Papapetriou, that
5    she was given -- or that misstatements of fact were made to
6    her concerning the provision of care to Mr. Goulbourne, isn't
7    that a sufficient basis for the Court to have some concern and
8    for, in particular, Mr. Glucksnis, in particular to be aware
9    of a potential conflict because wouldn't there be a conflict
10   just based on those facts and circumstances, putting aside any
11   referral to an attorney general's office in criminal cases,
12   but rather with respect to any kind of civil exposure as it
13   were?
14              MS. OLDS:  This is Dara Olds.
15              Think I understand Your Honor's concern, but I think
16   at this point there hasn't been any such referrals and the
17   review --
18              THE COURT:  But why is that?  I'm a little confused
19   because the question about conflicts and potential conflicts,
20   right, it presupposes just in the word potential that the
21   conflict hasn't yet arisen and that is why isn't it the case
22   that it's the prudent course to address it, so the individuals
23   can simply indicate whether or not in light of a potential
24   conflict they waive it for purposes of this proceeding?
25              MS. OLDS:  The individuals as part of this process

Proceedings                                                                 7

1   are made aware that the Department of Justice represents MDC
2   as well as the witnesses.  And, so, when the Department is
3   aware of such a conflict, where the interest of those
4   witnesses diverges from the interest of the MDC, we will make
5   them aware of that and they have the opportunity even before
6   then, even in the first instance, to decline the Department of
7   Justice representation and to have their own attorney.  They
8   are always --
9              THE COURT:  I am sorry.  I'm a little confused as to
10  how your response is addressing the concerns that the Court
11  has raised in response to the issue raised by Mr. Biale.  I'm
12  struggling here.
13             MS. OLDS:  We don't see an actual conflict.
14             THE COURT:  I do not know how many times I can use
15  the phrase "potential conflict" and that conflict may arise by
16  virtue of what is said tomorrow or, excuse me, Thursday.
17             I understand, no actual conflict if we can just use
18  that as the baseline, the Court understands; not an actual
19  conflict.  We are talking about a potential conflict.
20             Why is it not the prudent course for the Court to be
21  given some assurances that these individuals have been made
22  aware of a potential conflict; not an actual conflict, and we
23  can proceed on Thursday and made aware by independent counsel
24  and not the Department of Justice?
25             MS. OLDS:  I just want to understand what Your Honor

1   is suggesting.  Is Your Honor suggesting that in order to
2   proceed, that these witnesses should have independent
3   counsel advise them as far as their rights to waive the
4   conflict?
5              THE COURT:  Yes.  Pretty straight forward, yes.
6   Just so that I can know that any potential conflict that may
7   arise as a result of this hearing on Thursday has been
8   knowingly waived to the extent that the individuals wish to
9   proceed on Thursday with the Department of Justice.
10             MS. OLDS:  This situation is pretty reminiscent of
11  Gibbons (ph) contest where representation was approved for
12  individuals.  The Department of Justice doesn't obtain
13  independent counsel for purposes of allowing the witnesses to
14  waive -- make an independent decision about waiver.
15             THE COURT:  I do not know how those practical
16  considerations are the Court's considerations.  My concern
17  here is that it's an issue concerning conflict and I'm
18  looking, just out of -- and certainly admittedly this is what
19  Mr. Biale included in his letter.
20             "The ordinary requirements for representation are
21  met, but where the conflicts and the factual or legal
22  positions of the number of defendants make representation by a
23  single attorney impossible or where other circumstances are
24  present that make direct department representation
25  unsubstitutable, retention of private counsel at government

1    expense may be authorized, if appropriate, and subject to the
2    availability of funds."
3             What I am talking about at least at this juncture is
4    a very narrow representation.  I've got to imagine, if I'm
5    just spit balling it that we're talking about, you know, maybe
6    an hour's worth of time for an independent attorney to be able
7    to advise the five individuals of the potential conflict and
8    for them to make a determination if they want to waive any
9    potential conflict so that we can proceed and the Court can
10   feel assured that the individuals are proceeding knowingly
11   about any potential issues here.
12            This seems to be -- at least in my mind, this seems
13   to be at least somewhat consistent with the concerns raised
14   initially by the Government in its original letter that says,
15   listen, we think we need to explore whether we should have
16   counsel.
17            I don't understand why there seems to be some
18   pushback at the notion of ensuring that it is conflict-free
19   counsel or that any potential conflict is waived.
20            MR. BIALE:  Your Honor, this is Mr. Biale.  Can I
21   perhaps make a suggestion?
22            THE COURT:  Yes.
23            MR. BIALE:  So, I have been in situations where --
24   occasions where I've been on CJA duty, I've come into a
25   courtroom just to act as Curcio counsel where the Court is

Proceedings 10

1  informing a defendant about a potential conflict --
2              THE COURT:  No, I understand.  I don't know if
3  CJA -- if I'm permitted under the CJA Act to allow for a CJA
4  Curcio counsel through CJA Act funds.  I can look into it.  I
5  don't have a problem doing that, but you understand the
6  difference between that posture and this; correct?
7              MR. BIALE:  I do.  I do.  I was going to suggest
8  that we have a lawyer on duty on Thursday simply come to court
9  and be present for the Court'S inquiry with the witnesses
10 about the potential conflict and I think that for the
11 reasons -- the other reason that I pointed out in my letter
12 this is a situation where some of the witnesses where there
13 could be potential criminal exposure, and, you know, I am a
14 CJA lawyer and I've been called in on circumstances to
15 advise --
16             THE COURT:  I've done it so many times here as well.
17 I just need to arrive at a point where I believe it's
18 appropriate to use CJA counsel for these purposes.  I need to
19 think about that for a moment.
20             MR. BIALE:  I was trying to make a suggestion.
21             THE COURT:  It may not be a bad suggestion.  I just
22 need to think about it.
23             Assuming that the Court were able to arrive at a
24 position that's -- having a CJA lawyer serve as Curcio counsel
25 for at least the introductory portion of the evidentiary

Proceedings 11

hearing, which is all it would take for us to be able to -- well, just before that to give them a chance to advise.

But, in any event, does the Government have any objection?

MS. OLDS: We would, Your Honor. We don't think that Curcio applies here. The CJA procedures would not apply in this proceeding because they're not criminal defendants.

THE COURT: Okay. Well, then, we're going to go back to where I was. Let's have you all get independent counsel so that I can be rest assured that they have been advised that there is a potential conflict. Okay?

MS. OLDS: Your Honor, we can relay that to the department that approves representation and relay Your Honor's concerns here. I think as --

THE COURT: You understand that that department doesn't determine how I proceed. So you haven't addressed my concerns. That department cannot.

MS. OLDS: Well, Your Honor, I think it might make sense for us to provide something written to the Court because it sounds like Your Honor is directing us to spend funds that we're not authorized to spend at this point, if I understand Your Honor's wording correctly.

THE COURT: Was that a question to me or was that -- I'm not following you.

MS. OLDS: I just wanted to be sure that I

1   understand.
2              THE COURT:  What I'm telling you is that your
3   response to my letter of yesterday doesn't address the
4   conflict concerns that were raised in Mr. Biale's letter.
5   Perhaps you should have and then we could have figured out a
6   way to address this.  But simply saying that you are
7   representing these individuals doesn't address the conflict
8   concerns at all and you haven't done so in this call.
9              The only way that I know to address the conflict
10  concerns is pretty straight forward by the way.  It's not that
11  complicated.  Simply have these individuals advised of a
12  potential conflict and then I can ask them if they're willing
13  to waive it.  It's not complicated stuff.  I feel like it's
14  been overly complicated by you.
15             MS. OLDS:  I think I understand better what Your
16  Honor is suggesting; that we advise them of the potential
17  conflict and represent to the Court that they have agreed to
18  waive that.
19             THE COURT:  Yes and no.  They need to be advised,
20  but not by you.
21             MS. OLDS:  Is Your Honor suggesting --
22             THE COURT:  I am suggesting that you have an
23  attorney advise them.
24             You will forgive me.  I'm in the middle of a long
25  trial.  It's 5:25.  I'm tired of repeating myself.  I think

1  it's clear what I'm saying and I also don't think it's all
2  that complicated.
3          MS. OLDS:  As far as our office not advising of the
4  potential conflict, is that express to this office or the
5  department as a whole as far as --
6          THE COURT:  You all are one and the same.  You all
7  are not divisible.  So, find an independent counsel to advise
8  them of the conflict.  Come prepared on Thursday with the
9  representation that they have been advised by independent
10 counsel so that we can proceed.
11         I don't think there's anything unclear about it.
12 Make it happen by Thursday.  I will see you all here on
13 Thursday at 11 o'clock.  We're done.
14         MR. NAVARRO:  Your Honor, this is Francisco Navarro
15 on behalf of the Criminal division.  I have one procedural
16 question.
17         THE COURT:  Hello, Mr. Navarro.  Good to hear from
18 you.
19         MR. NAVARRO:  Good to hear from you as well, Your
20 Honor.  Just a brief procedural question; does Your Honor wish
21 for the Criminal Division attorneys meaning myself and
22 Mr. Edwards-Balfour to also be present at the hearing?  We
23 would be happy to do so if Your Honor would like, but I didn't
24 want to be superfluous either.
25         THE COURT:  That is not necessary, but thank you for

1  the question.
2           MR. NAVARRO:  Thank you, Your Honor.
3           THE COURT:  Folks, I am now done for the day.  I
4  will see you on Thursday at 11 o'clock.

6           (Matter adjourned.)
7                       - ooOoo -