# EXHIBIT A

Elizabeth Wolstein
Partner

212 612-0688
ewolstein@schlamstone.com

**SCHLAM STONE & DOLAN LLP**

26 Broadway, New York, NY 10004
Main: 212 344-5400  Fax: 212 344-7677
schlamstone.com

April 1, 2025

BY ECF FILING
Honorable LaShann DeArcy Hall
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

    Re: *U.S. v. Goulbourne*, 22-cr-106 (LDH)

Dear Judge DeArcy Hall:

We represent non-party Marilyn Garcia, R.N., a nurse at the Metropolitan Detention Center Brooklyn (the "MDC") who appeared as a witness at the evidentiary hearing conducted on January 13, 2025, for the purpose of investigating aspects of defendant Jonathan Goulbourne's medical care at the MDC. This joint letter is also submitted on behalf of non-parties Dr. Bruce Bialor and Blake Glucksnis, both of whom also appeared as witnesses at the evidentiary hearing.

As shown in the non-parties' proposed findings of fact being filed today, we respectfully submit that the evidence at the hearing established that Mr. Goulbourne received adequate medical care at the MDC in conjunction with his appendicitis, and that these proceedings should therefore be closed. Nevertheless, we write respectfully to bring to the Court's attention a jurisdictional issue affecting these proceedings. For the reasons set forth below, it is respectfully submitted that this Court lacks ancillary jurisdiction to initiate a judicial inquiry into Mr. Goulbourne's medical care at the MDC in the circumstances presented in this criminal case.

### The Court Lacks Ancillary Jurisdiction To Conduct These Proceedings

 A. Legal Standards – In General

The federal courts "are courts of limited jurisdiction." *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 26 (2025). This Court's jurisdiction over Mr. Goulbourne's criminal case rests on 18 U.S.C. § 3231, which vests exclusive jurisdiction in the district courts "of all offenses against the laws of the United States." As Ms. Garcia, Dr. Bialor, and Mr. Glucksnis (collectively, the "Individual Non-Parties") are not defendants in the criminal case but rather non-parties, the Court's power to conduct proceedings and issue orders as against them is necessarily based, if it exists at all, on ancillary jurisdiction.

Honorable LaShann DeArcy Hall
April 1, 2025
Page 2

Ancillary jurisdiction "'is aimed at enabling a court to administer justice within the scope of its jurisdiction.'" *Stein v. KPMG, LLP*, 486 F.3d 753, 760 (2d Cir. 2007) (quoting *Garcia v. Teitler*, 443 F.3d 202, 208 (2d Cir. 2006)). Ancillary jurisdiction may be asserted

> for two separate, though sometimes related, purposes: (1) to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent, and (2) to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees.

*Kokkonen v. Guardian Life. Ins. Co.*, 511 U.S. 375, 379-80 (1994); *see also Garcia*, 443 F.3d at 208 (same, quoting *Kokkonen*). Through ancillary jurisdiction, "[i]ncident to the disposition of the principal issues before it, a court may decide collateral matters necessary to render complete justice." *Id*. at 208 (internal quotation marks omitted). "'The major purpose of ancillary jurisdiction ... is to insure that a judgment of a court is given full effect; ancillary orders will issue when a party's actions, either directly or indirectly, threaten to compromise the effect of the court's judgment.'" *Id*. (quoting *Morrow v. District of Columbia,* 417 F.2d 728, 740 (D.C. Cir. 1969)).

### B. Ancillary Jurisdiction In Criminal Cases

Consistent with these principles, examples of the proper exercise of ancillary jurisdiction in a criminal case include "to address a motion by a criminal defendant to have his arrest record expunged, and fingerprints and arrest photographs returned, following the dismissal of his indictment"; "to address a motion for the return of seized property"; and "to expunge criminal records." *Garcia*, 443 F.3d at 207 (citing cases). "The most common exercise of ancillary jurisdiction is, probably, to resolve fee disputes between a party and its attorney arising in litigation in which the attorney represented the party." *Stein,* 486 F.3d at 760; *see also Levitt v. Brooks*, 669 F.3d 100, 103 (2d Cir. 2012) (ancillary jurisdiction appropriate where "the parties to the fee dispute are both involved in the underlying action" and "defendant's legal fees [were] relevant to the district court's management of its case"); *Garcia*, 443 F.3d at 209 ("the fee dispute here was properly related to the [criminal] action, and in managing that proceeding, it was necessary for the court to resolve it"). Even though the attorney in a fee dispute is a non-party, he or she is "already before the court" "as an officer of the court." *Stein,* 486 F.3d at 761.

The landscape is very different, however, when it comes to airing claims against non-parties not before the court in the criminal case. As to such non-parties, "the need for the ancillary proceeding and the efficiencies provided by it must be both sufficiently great to outweigh the prejudice to the non-party and to be consistent with the limited jurisdiction of federal courts." *Stein*, 486 F.3d at 760-61. The Second Circuit has further explained why such proceedings are rarely appropriate:

Honorable LaShann DeArcy Hall
April 1, 2025
Page 3

> An ancillary proceeding may subject the non-party to what may be a different forum and different procedural or even substantive rules than would normally be involved in disposing of the claim at issue. In addition, the assertion of ancillary jurisdiction over matters that are otherwise outside the jurisdiction conferred by the Constitution and the Congress can be justified only by compelling needs arising in the exercise of the jurisdiction that is conferred. While we do not exclude the possibility of a legitimate ancillary proceeding involving a nonparty to the primary litigation, we believe that *the requisite compelling circumstances will be rare, as the need for such a proceeding generally will be far less pressing than in cases involving parties already before the court*.

*Id.* at 761 (emphasis added).

### C. The Court Lacks Ancillary Jurisdiction To Adjudicate Claims Surrounding Mr. Goulbourne's Medical Care As Against The Individual Non-Parties

Applying the foregoing principles makes apparent that the Court lacks ancillary jurisdiction to adjudicate claims or issue orders applicable against the Individual Non-Parties relating to the care Mr. Goulbourne received at MDC in connection with his appendicitis.

First, any claims relating to Mr. Goulbourne's medical care in April 2024 have nothing to do with the facts in the criminal case. There is no arguable interdependence of facts and thus no arguable need for civil claims against the Individual Non-Parties to be adjudicated in a proceeding collateral to the criminal case. The fact that the criminal case against Mr. Goulbourne has ended makes use of the criminal case to conduct factfinding on unrelated civil claims even more unnecessary. *See United States v. Bui*, 674 F. App'x 114, 116-17 (3d Cir. 2017) (exercise of ancillary jurisdiction not warranted in absence of "sufficient factual interdependency with" criminal case and criminal case was "now closed"); *United States v. Afremov*, 611 F.3d 970, 976 (8th Cir. 2010) (no ancillary jurisdiction where resolving contract claim against criminal defendant, which had "little or no factual or logical interdependence with the underlying criminal charges," "will not affect the final judgment [already] entered in the criminal case"); *Stein*, 486 F.3d at 762 (no ancillary jurisdiction where "the interrelationship of the factual issues underlying the finding of constitutional violations [in the criminal case] and the asserted contract claims [was] marginal").

In addition, these proceedings are not necessary to effectuate the Court's orders or decrees in the criminal case. Again, the Court has entered judgment and imposed sentence; the criminal case against Mr. Goulbourne is over. Neither the proceedings, the evidence adduced, or any order the Court could issue relating to Mr. Goulbourne's medical care are necessary to give full effect to any order in the now-completed criminal proceedings or this Court's judgment or sentence.

Honorable LaShann DeArcy Hall
April 1, 2025
Page 4

Instead, the Court stated that the purpose of the evidentiary hearing was

> for the Court to be able to better understand what transpired with respect to provision of care to Mr. Goulbourne, Mr. Jonathan Goulbourne, sometime in April, I think starting April 14h of 2024. . . . I need to get to the bottom of what transpired once Mr. Goulbourne was returned to the MDC.
>
> As you know all [sic], I have some grave concerns about the failure of the MDC, as I understand it from the information that I have today, to provide Mr. Goulbourne with all of the necessary medication that he was prescribed by the physicians upon his return to MDC, in particular, antibiotics and to a lesser extent but not at all unimportant, the provision of pain medications.

Transcript of Criminal Cause for Evidentiary Hearing, January 13, 2025, at 4:21 – 5:13 (copy attached as Exhibit A).

That explanation was consistent with Court's explanation at the May 1, 2024 hearing of the purpose of directing certain BOP employees to appear and give testimony:

> No my understanding, and I want to have an of [sic] better understanding of his care, because my understanding with respect to antibiotics is that once you've had a significant lapse in the dosages that there are two options which is, one, is to discontinue the antibiotics altogether, or two, to start a regimen, a new regimen. . . .
>
> What I want, as indicated, I'm going to have an evidentiary hearing to discuss what has transpired. In the past, however, I want something, a notarized statement from Mr. Baylor, concerning the provision of antibiotics now because I want to have a better understanding of Mr. Goulbourne's treatment today. . . .
>
> I'm also directing that Mr. Goulbourne be transported to a third-party doctor by the end of day tomorrow so that he can be examined and a determination -- we can get a second opinion as to whether he requires antibiotics or other treatment related to his appendectomy. And I expect to have a report by end of day tomorrow and please make sure that what I receive from the third-party is in writing. As I said, I intend to get to the bottom of this. We have a responsibility.

Transcript of Criminal Cause for Hearing, May 1, 2024, at 59:2 – 60:15 (copy attached as Exhibit B).

Honorable LaShann DeArcy Hall
April 1, 2025
Page 5

The connection to the criminal case is therefore even more attenuated than in *Stein v. KMPG*. There, in the underlying criminal case, the district court found that the government improperly threatened to prosecute KPMG to pressure the company to cut off payment of legal fees for some of the individual defendants, thereby violating their Fifth and Sixth Amendment rights to a fair trial and effective assistance of counsel. *See Stein*, 486 F.3d at 756. The district court "suggested that the constitutional violation could be rendered harmless" if the individual defendants could force KPMG to resume (or start) paying their legal fees, and, invoking ancillary jurisdiction, the court initiated a civil docket number for the individuals to make a contract claim against KPMG. *See id*. at 757 (internal quotation marks omitted). It then denied KPMG's motion to dismiss for lack of subject matter jurisdiction and set a trial date for six weeks later, at which the court said a combination of the Rules of Civil and Criminal Procedure would apply. *Id*.

The Second Circuit held that the district court's exercise of ancillary jurisdiction was "clearly outside" the boundaries of the doctrine. *Id*. at 760. Most significantly, the "prejudice to KPMG [was] clear" in having civil claims adjudicated in "a proceeding ancillary to a criminal prosecution," through an expedited proceeding applying "an ad hoc mix of the criminal and civil rules of procedure determined on the fly." *Id*. at 761. Among other things, such a proceeding did not leave room for the necessary factual development, and the need for it was "also far less pressing than contemplated by the district court" because the facts needed for a trial on breach of contract claims would "go over very different factual ground" from the issues raised by the government's coercion in the criminal case, which was directed at voluntary payments (rather than payments allegedly owed to the individuals under a contract theory). *Id*. at 762.

These factors and more are similarly present here. The Individual Non-Parties have been prejudiced by the absence of the protections afforded by the Federal Rules of Civil Procedure and would be further prejudiced if the Court were to issue a remedial order against them. The Individual Non-Parties have had no notice of the nature of the claims against them. The strictures of pleading in compliance with the Federal Rules are absent. Instead, the claims of poor medical treatment for Mr. Goulbourne's appendicitis were raised in a letter to the Court, even though the letter's central claim of a ruptured appendix would readily have been revealed as inaccurate upon the kind of investigation required under Rule 11 before filing a civil complaint. The Individual Non-Parties had no opportunity to move to dismiss, even though such a motion would have had an overwhelming likelihood of success and thus would have avoided an evidentiary hearing. That is because any negligence claim against the Individual Non-Parties is barred by the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671-2680, and any *Bivens* claim would have to be dismissed for lack of administrative exhaustion under the PLRA, while also having virtually no chance of success on the merits, particularly considering the U.S. Supreme Court's most recent contraction of *Bivens* doctrine in *Egbert v. Boule*, 596 U.S. 482 (2022).[1]

---

[1] *See* 28 U.S.C.A. § 2679(b)(1) (providing for exclusivity of FTCA remedy against United States for injury "resulting from the negligent or wrongful act or omission of any employee of

Honorable LaShann DeArcy Hall
April 1, 2025
Page 6

In addition, there is nothing "pressing" about adjudicating unspecified claims regarding an inmate's medical treatment within a criminal case that is over. An alternative remedy for such claims exists in the form of an action under the Federal Tort Claims Act, for which the filing of an administrative claim is a pre-requisite to a court's exercise of subject matter jurisdiction.[2] *See Stein*, 486 F.3d at 762-63 (ancillary proceeding to require KPMG to pay legal fees not an "indispensable" or even "a full remedy," while "[d]ismissal of an indictment for Fifth and Sixth Amendment violations is always an available remedy").[3]

Finally, the fact that the Court has expended judicial resources on these proceedings should not lead to a finding of ancillary jurisdiction here. The Supreme Court has made clear that "neither the convenience of litigants nor considerations of judicial economy can justify the extension of ancillary jurisdiction" beyond its usual limits. *Afremov*, 611 F.3d at 977-78 (quoting *Peacock v. Thomas*, 516 U.S. 349, 355 (1996)). It is well settled that "[o]bjections to subject-matter jurisdiction . . . may be raised at any time," including after trial. *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011).

For the foregoing reasons, it is respectfully submitted that the Court lacks ancillary jurisdiction over these proceedings and they should be closed without further orders by the Court.

---

the Government while acting within the scope of his office or employment"); *Castro v. United States*, 34 F.3d 106, 110 (2d Cir. 1994) ("[A] claimant's exclusive remedy for nonconstitutional torts by a government employee acting within the scope of his employment is a suit against the government under the FTCA."); *see also*, *e.g.*, *Porter v. Nussle*, 534 U.S. 516, 532 (2002) ("The PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."); *Abernathy v. Strada*, No. 12-CV-6072 DLI VVP, 2015 WL 997980, at *3 (E.D.N.Y. Mar. 6, 2015) ("The PLRA's exhaustion requirement applies to *Bivens* claims.").

[2] *See*, *e.g.*, *Lipkin v. SEC*, 468 F. Supp. 2d 614, 624 (S.D.N.Y. 2006) ("Where, as here, a plaintiff fails to file a proper administrative claim before bringing suit, any FTCA claim must be dismissed for lack of subject matter jurisdiction.").

[3] This letter does not argue that ancillary jurisdiction could never exist to investigate a defendant's medical care by BOP. In connection with sentencing, a court may need to obtain evidence to determine whether the defendant meets the standards for a downward departure on medical grounds under U.S.S.G. § 5H1.4, which requires an "'extraordinary physical impairment' . . . that [the] Bureau of Prisons is unable to accommodate." *United States v. Persico*, 164 F.3d 796, 806 (2d Cir. 1999). Here, however, Mr. Goulbourne's sentencing was completed before the evidentiary hearing and the proceedings therefore cannot be justified as necessary to sentencing.

Honorable LaShann DeArcy Hall
April 1, 2025
Page 7

Respectfully,

*s/ Elizabeth Wolstein*

Elizabeth Wolstein
*Counsel for Non-Party Marilyn Garcia*

Heidi A. Wendel
*Counsel for Non-Party Dr. Bruce Bialor*

Nicholas Kaizer
*Counsel for Non-Party Blake Glucksnis*

cc:   All counsel of record (by ECF filing)

# EXHIBIT A

                                                                  1

1                 UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF NEW YORK
2    ------------------------------x
                                         22-CR-106(LDH)
3    UNITED STATES OF AMERICA,
                                         United States Courthouse
4                                        Brooklyn, New York
             -against-
5                                        January 13, 2025
                                         10:00 a.m.
6    JONATHAN GOULBOURNE,

7               Defendant.

8    ------------------------------x

9         TRANSCRIPT OF CRIMINAL CAUSE FOR EVIDENTIARY HEARING
               BEFORE THE HONORABLE LaSHANN DeARCY HALL
10                  UNITED STATES DISTRICT JUDGE

11

12                    A P P E A R A N C E S

13   For the Government:      UNITED STATES ATTORNEY'S OFFICE
                              District of New Jersey
14                            970 Broad Street, Ste 700,
                              Newark, New Jersey 07102
15                            Brooklyn, New York 11201
                              BY:  MATTHEW J. MAILLOUX, ESQ.
16                            Assistant United States Attorney

17

18   For the Defendant:       SHER TREMONTE LLP
     Jonathan Goulbourne      80 Broad Street - 13th Floor
19                            New York, New York 10004
                              BY:  NOAM BILE ESQ.
20

21   ALSO PRESENT:

22   For Elizabeth Lynch:     BY:  CHRISTOPHER HARWOOD, ESQ.

23                            BY:  ANNA ADAMS, ESQ.

24

25

                          *LEEANN N. MUSOLF, RPR*
                          *Official Court Reporter*

```
 1   (Continuing.)

 2   For Marilyn Garcia:      BY: ELIZABETH WOLSTEIN, ESQ.

 3

 4   For Dr. Bruce Bialor:    BY: HEIDI WENDEL, ESQ.

 5

 6   For Blake Glucksnis:     BY: NICHOLAS KAIZER, ESQ.

 7

 8

 9

10

11

12   Court Reporter:          LEEANN N. MUSOLF, RPR, CCR
                              Phone:  718-613-2489
13                            Email:  lmusolf.edny@gmail.com

14

15

16

17

18

19

20

21

22

23

24

25   Proceedings recorded by mechanical stenography.  Transcript
     produced by computer-aided transcription.
```

```
 1              MS. WENDEL:  Heidi Wendel for Dr. Bruce Bialor.
 2              THE COURT:  Okay.
 3              MR. KAIZER:  And Nicholas Kaizer, Levitt and Kaizer,
 4    on behalf of Blake Glucksnis.
 5              THE COURT:  Doctor Glucksnis?
 6              MR. KAIZER:  No.
 7              THE COURT:  Okay.  All right.
 8              MR. BIALE:  Good morning, Your Honor.
 9              Noam Biale for Jonathan Goulbourne.  Mr. Goulbourne
10    is on the phone with us, and I'm joined at counsel table by my
11    paralegal Carmine Hachenburg.
12              THE COURT:  Good morning.  You all may be seated.
13              All right, folks.  This is, at this point in time, a
14    long-awaited evidentiary hearing.  I want to first start by
15    extending my thanks and apologies to you all with respect to
16    the scheduling of the last hearing which you all know I had to
17    adjourn because of a family matter, but I will say
18    specifically my daughter had an audition for college, but she
19    has now since been accepted into Wesleyan and now is all good.
20    So thank you all for your patience.
21              All right, folks.  The purpose of this hearing is
22    for the Court to be able to better understand what transpired
23    with respect to provision of care to Mr. Goulbourne,
24    Mr. Jonathan Goulbourne, sometime in April, I think starting
25    April 14th of 2024.
```

1            First, the provision of care for Mr. Goulbourne
2    which started, again, with the complaint of abdominal pain on
3    the 14th.  My understanding is then treatment that began on
4    the 15th, emergency medical procedure that transpired later.
5    And then I need to get to the bottom of what transpired once
6    Mr. Goulbourne was returned to the MDC.
7            As you know all, I have some grave concerns about
8    the failure of the MDC, as I understand it from the
9    information that I have today, to provide Mr. Goulbourne with
10   all of the necessary medication that he was prescribed by the
11   physicians upon his return to MDC, in particular, antibiotics,
12   and to a lesser extent but not at all unimportant, the
13   provision of pain medications.
14           Now, the individuals who have been identified as
15   witnesses here today are individuals whose names were provided
16   to the Court by Ms. Papapetru at the last hearing who, as
17   everyone knows, serves as in-house counsel at the MDC, and my
18   understanding from her representations is that each of the
19   individuals who have been identified as witnesses played some
20   role either in the provision of care initially or some role in
21   the provision of lack thereof, of the medication.
22           So I want to happen is this is going to start off
23   with some examination by the parties.  I may interrupt if I
24   feel I need to to get some clarification.  I don't have an
25   order of witnesses that I prefer.  I don't know if you all

# EXHIBIT B

Case 1:22-cr-00106-DDH   Document 481-2   Filed 04/06/25   Page 15 of 58 PageID #:
Case 1:22-cr-00106-LDH   Document 198-12  Filed 09/06/24   Page 15 of 18 PageID #:
5604
3601

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - -X
UNITED STATES OF AMERICA,       : 22-CR-106(LDH)
                                :
                                :
                                :
                                : United States Courthouse
     -against-                  : Brooklyn, New York
                                :
                                :
                                :
                                : Wednesday, May 1, 2024
JONATHAN GOULBOURNE,            : 12:00 p.m.
                                :
     Defendant.                 :
                                :
- - - - - - - - - - - - - - - - -X

TRANSCRIPT OF CRIMINAL CAUSE FOR HEARING
BEFORE THE HONORABLE LASHANN DEARCY HALL
UNITED STATES DISTRICT JUDGE

A P P E A R A N C E S:

For the Government:    UNITED STATES ATTORNEY'S OFFICE
                       Eastern District of New York
                             271 Cadman Plaza East
                             Brooklyn, New York 11201
                       BY: TARA B. MCGRATH, ESQ.
                           FRANCISCO J. NAVARRO, ESQ.
                           Assistant United States Attorney

For the Defendant:     SHER TREMONTE, LLP
                       Attorneys for the Defendant -
                       Jonathan Goulbourne
                             90 Broad Street
                             23rd Floor
                             New York, New York 10004
                       BY: NOAM BIALE, ESQ.

*Anthony D. Frisolone, FAPR, RDR, CRR, CRI, CSR*
*Official Court Reporter*

2

A L S O   P R E S E N T:

        METROPOLITAN DETENTION CENTER
        Legal Department
           80 29th Street
           Brooklyn, New York 11232
        BY: SOPHIA PAPAPETRIOU, ESQ.


Court Reporter:   Anthony D. Frisolone, FAPR, RDR, CRR, CRI
                  Official Court Reporter
                  Telephone: (718) 613-2487
                  Facsimile: (718) 613-2694
                  E-mail: Anthony_Frisolone@nyed.uscourts.gov

Proceedings recorded by computerized stenography.
Transcript produced by Computer-aided Transcription.

Case 1:22-cr-00006-DDH Document 98-12 Filed 04/06/25 Page 17 of 58 PageID #: 3406

1  THE COURT: Dr. Baylor.
2  No my understanding, and I want to have an of
3  better understanding of his care, because my understanding
4  with respect to antibiotics is that once you've had a
5  significant lapse in the dosages that there are two options
6  which is, one, is to discontinue the antibiotics altogether,
7  or two, to start a regimen, a new regimen. In this case, it
8  was a seven-day regimen, correct, that was originally
9  prescribed?
10  MS. PAPAPETRIOU: Five.
11  THE COURT: Excuse me, a five-day regimen.
12  And you're saying that today there was a
13  determination made by Mr. Baylor that he should not receive
14  an additional dosage of medication?
15  MS. PAPAPETRIOU: Yes.
16  THE COURT: But that was Mr. Baylor, right?
17  MS. PAPAPETRIOU: Yes.
18  THE COURT: So he was already on my list.
19  What I want, as I indicated, I'm going to have an
20  evidentiary hearing to discuss what has transpired. In the
21  past, however, I want something, a notarized statement from
22  Mr. Baylor, concerning the provision of antibiotics now
23  because I want to have a better understanding of
24  Mr. Goulbourne's treatment today.
25  Yes, Mr. Biale?

1    MR. BIALE: Can I also ask that the Court direct
2 that he be taken to an outside doctor and have that doctor
3 determine whether he needs additional antibiotics?
4    THE COURT: Yes, exactly. That's an excellent
5 point by you.
6    I'm also directing that Mr. Goulbourne be
7 transported to a third-party doctor by the end of day
8 tomorrow so that he can be examined and a determination --
9 we can get a second opinion as to whether he requires
10 antibiotics or other treatment related to his appendectomy.
11 And I expect to have a report by end of day tomorrow and
12 please make sure that what I receive from the third-party is
13 in writing.
14    As I said, I intend to get to the bottom of this.
15 We have a responsibility.
16    MR. NAVARRO: Your Honor, I just want to clarify
17 one point in the Court's last order.
18    Your Honor said that you wanted a report tomorrow
19 regarding whatever the outside evaluator says. Is that a
20 report from the Government or from the MDC that you are
21 looking for?
22    THE COURT: The MDC should provide it to the
23 Government and the Government should provide it to the
24 Court.
25    MR. NAVARRO: My only concern with that, your